## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ROY E. MILLER                )
                             )
      Plaintiff,        )
                             )
v.                           )    Civil Action No. 3:12CV873-HEH
                             )
DAVID T. PARRISH, *et al.*,  )
                             )
      Defendants.      )

## MEMORANDUM OPINION
### (Granting Defendant's Motion for Summary Judgment)

Roy E. Miller ("Miller") brought this lawsuit pursuant to 42 U.S.C. § 1983

alleging a number of constitutional claims against the Sheriff of Hanover County,

Virginia and several of his deputies (collectively "Defendants").[1] Based upon a traffic

encounter with several Hanover Sheriff's Deputies, he asserts claims for an allegedly

unlawful stop and arrest, the use of excessive force, an unlawful search and seizure of his

property, and a violation of his First Amendment free speech rights. Defendants move

for summary judgment, arguing that the undisputed facts fail to establish any

constitutional violation. Even if any violation occurred, the deputies argue that qualified

---

[1] Initially, Miller also brought claims against Hanover County, Thomas R. Dew, Peter L. Trible, Stephen Royalty, and Holli S. Reeves. The Court dismissed Defendants Dew and Trible on judicial immunity grounds. (Mem. Order of Feb. 13, 2013, ECF No. 39.) Similarly, the Court dismissed claims against Defendants Royalty and Reeves based on the doctrine of prosecutorial immunity. (Mem. Order of March 20, 2013, ECF No. 54.) This Court also dismissed Hanover County, mainly because it is a distinct entity from the Sheriff of Hanover County under Virginia law. (Mem. Op. of March 4, 2013 at 8-9, ECF No. 53.) Any claims or issues raised with respect to these now-dismissed Defendants are not addressed in this Memorandum Opinion. Miller has appealed the dismissals of Defendants Dew, Trible, Royalty, and Reeves.

immunity shields their actions under these circumstances. The arguments for and against summary judgment have been adequately briefed, so the Court dispenses with oral argument, finding that it will not aid in the decisional process.

Miller admits that some of the facts are not in dispute; he submits evidence to dispute some of the purportedly undisputed facts; but—fatal to his claims—he fails to adequately dispute a number of the material facts. As the Court construes the record here, Miller has not offered sufficient evidence to establish any constitutional claim. Moreover, on this record, qualified immunity clearly shields the deputies. Accordingly, for the reasons explained herein, Defendant's Motion for Summary Judgment will be granted.

## I. BACKGROUND

Accurately stating the standard of review on summary judgment, Miller emphasizes that the Court must construe the facts in his favor as the non-moving party. (Pl.'s Ans. Br. Resp. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 8, ECF No. 71.) He emphasizes that the same standard was applied to his detriment—and to Defendants' benefit—when this Court denied Miller's own motion for summary judgment. (*Id.*) Miller is correct that the standard must now favor his position as non-movant with respect to the motion presently before the Court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). At the same time, Miller may not rely solely on "mere allegations or denials"—he must respond with *evidence* to establish a genuine dispute concerning any particular fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To the extent that Miller fails to properly dispute a point of fact in accordance with Rule

56(c), Rule 56(e) then permits the Court to consider Defendants' version of that fact undisputed for purposes of the motion. Applying these rules, the facts are construed as follows for purposes of resolving Defendants' Motion for Summary Judgment.[2]

On September 17, 2012, Miller was driving his pickup truck[3] to the feed store in Hanover County, Virginia, when he came to a "traffic safety checkpoint." (Aff. of David T. Parrish ("Parrish Aff.") at ¶ 2, ECF No. 69-1; Pl.'s Opp'n at ¶¶ 2, 17.) Uniformed Deputies of the Hanover County Sheriff's Department stopped him as he arrived at the

---

[2] Defendants support their statement of undisputed material facts by the affidavits of Defendants Parrish, Carter, Winfree, and Hines. (*See* Defs.' Br. Supp. Mot. Summ. J. ("Defs.' Br.") Exs. A-D, ECF Nos. 69-1 through 69-4.) The practice of supporting summary judgment with affidavits is expressly permitted by Fed. R. Civ. P. 56(c)(1)(A). Quoting *Porter v. Porter*, 274 N.W.2d 235 (N.D. 1979), Miller objects to these affidavits as inadmissible because, as *Porter* indicates, "[t]he practice of an attorney filing an affidavit on behalf of his client asserting the status of that client is not approved, inasmuch as not only does the affidavit become hearsay but it places the attorney in a position of a witness thus compromising his role as an advocate." *Id.* at 243 n.1. *Porter* does not render Defendants' use of affidavits objectionable for two reasons. First, that decision was issued by the Supreme Court of North Dakota—thus it is not binding on this Court. More significantly, Miller's reliance on the case is misplaced. *Porter* involved affidavits signed by the lawyer of record in that case. Each affidavit in this case was signed by the witness-affiant, not the lawyer. The mere fact that the lawyer filed the affidavit with the Court does not render the lawyer a witness, as was the problem in *Porter*.

[3] Miller disputes that he was driving a "motor vehicle," apparently due to a perceived distinction between a "motor vehicle" and a "pickup truck." In part, Miller makes this distinction based on 18 U.S.C. § 31(a)(6), which limits the definition of "motor vehicle" to vehicles used for "commercial purposes." By its plain terms, that definition applies only to federal crimes found at 18 U.S.C. §§ 31-40. That definition does not apply here, however, because no federal charges were brought against Miller. He also submits a "Brief in Support of Plaintiff's Right to Travel," which extols at length those authorities recognizing a right to move about the country without restriction. (ECF No. 71-3.) Irrespective of nomenclature, it is undisputed that Miller was driving a pickup truck when he encountered law enforcement on September 17, 2012. (Pl.'s Opp'n at ¶ 13.) To avoid confusion, the Court will simply refer to Miller's vehicle as a "pickup truck" in reciting the facts.

checkpoint. (Def.'s Br. Supp. Mot. Summ. J. ("Defs.' Br.") at 2, ECF No. 69; Pl's Opp'n

at ¶ 2.) Deputy David T. Parrish ("Parrish") observed that Miller's truck displayed "farm

use" plates instead of standard motor vehicle license plates, as well as an expired state

inspection sticker.[4] (Parrish Aff. at ¶ 4; Pl.'s Opp'n at ¶¶ 19-20.)[5] He therefore

demanded to see Miller's driver's license, which was in Miller's pocket. (*Id.* at ¶ 5.)

Miller refused to produce his license, offering his name and address instead. (*Id.* at ¶ 6;

Pl.'s Opp'n at ¶ 5.)

Parrish then sought the assistance of his supervisor, Sergeant Carter ("Carter"),

who insisted that Miller produce his driver's license immediately. (Pl.'s Opp'n at ¶ 8.)

Miller failed to comply. (*Id.*) Parrish, Carter, and other deputies continued to demand

that Miller produce his driver's license, admonishing him that he would be arrested if he

failed to do so. (*Id.* at ¶ 10; *see also* Parrish Aff. at ¶¶ 9-12.) After Miller refused to

---

[4] While the Code of Virginia specifically exempts vehicles used for certain agricultural purposes from the registration requirement, the Code allows optional registration for qualifying vehicles. Va. Code § 46.2-698. Here, it appears that Miller's pickup truck was not registered for farm use under Section 46.2-698. The distinction is of no consequence, however, because Section 46.2-698(G) specifically states that "[n]othing in this section shall affect the exemptions of agricultural and horticultural vehicles under §§ 46.2-664 through 46.2-670." For simplicity, the Court will refer to Miller's pickup truck as a "farm use" vehicle.

[5] Miller disputes this fact solely because he "is without knowledge or information sufficient to determine" whether it is true. (Pl.'s Opp'n at ¶ 3.) He takes the same position with respect to a number of other facts that Defendants claim are undisputed. (*See Id.* at ¶¶ 2, 7, 15, 23.) With respect to each fact that Miller disputes in this way, he has failed to create a genuine dispute of material fact because he fails to identify any contrary evidence. *See Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Thus, any facts disputed solely on the basis that Miller "is without knowledge or information" will be deemed undisputed for purposes of summary judgment.

comply several times, Parrish opened the door to the truck and grasped Miller's arm without Miller's consent. (Parrish Aff. at ¶ 13.) Miller recoiled as Parrish exhorted him to stop resisting removal from the vehicle. (*Id.* at ¶¶ 13-14.) While Miller firmly gripped the steering wheel to evade arrest, Parrish leaned into the truck, placed it in park, removed the keys from the ignition, and tried to remove Miller's hand from the steering wheel. (*Id.* at ¶ 14; Aff. of James Carter ("Carter Aff.") at ¶ 8, ECF No. 69-2; Pl.'s Opp'n at ¶ 12.) Simultaneously, Carter tried to gain control of Miller's left arm. (Carter Aff. at ¶ 8.) Suddenly, Miller released his grip and struck Parrish's arm in an effort to push it away. (*Id.*; Parrish Aff. at ¶ 14; Aff. of Roy Eldon Miller re: Transcript of Conversation with Magistrate Thomas R. Dew ("Dew Tr.") at 8, ECF No. 28-3.)[6]

Parrish and Carter were then able to subdue Miller who, by his own admission, attempted to resist arrest by tensing his body and moving his arms to avoid being handcuffed. (Parrish Aff. at ¶ 15; Carter Aff. at ¶ 9; Pl.'s Opp'n at ¶¶ 14-15.) At some point during his arrest, Miller asked Parrish and Carter for their oath of office and bond, which they declined to produce. (Parrish Aff. at ¶ 16.) At this point, Miller informed the

---

[6] In his attempt to create a genuine issue of material fact, Miller denies hitting Parrish; however, he admits as much in an affidavit reciting his conversation with a Hanover County magistrate. (Dew Tr. at 8.) Miller cannot deny striking Parrish in his brief while simultaneously confessing to it in a sworn affidavit. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [thereto] . . . the exhibit prevails."); *see also Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 512 (4th Cir. 2011) ("it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.") (citations and internal quotation marks omitted). While the Court accepts Miller's version as to how he struck Parrish, it cannot accept his contradictory denial that he did so.

deputies that he was on the way to the feed store. (*Id.* at ¶ 18; Pl.'s Opp'n at ¶ 17.) He was then arrested and taken to Pamunkey Regional Jail for presentation to a magistrate.

After hearing the evidence, a magistrate issued warrants charging Miller with "intentionally prevent[ing] a law-enforcement officer from lawfully arresting the accused" and for felony assault and battery of Deputy Parrish. (Parrish Aff. at ¶ 22; Pl.'s Opp'n Ex. B.) He also issued summonses to Miller for several traffic infractions. (Pl.'s Opp'n Ex. B.) Miller was committed to the jail and ordered held on a $5,000 bond. (Parrish Aff. at ¶ 23; Pl.'s Opp'n at ¶ 22; Aff. of Joseph D. Winfree ("Winfree Aff.") at ¶ 2, ECF No. 69-3.)

Upon Miller's arrival at the jail, Joseph Winfree ("Winfree") a Sergeant assigned to Pamunkey Regional Jail, conducted a pat-down and inventory of Miller's property. (Winfree Aff. at ¶ 3.) Among other items, Winfree took $211 cash from Miller. (*Id.* at ¶ 4; Pl.'s Opp'n at ¶ 24.) While the money was not returned in the form of cash, Miller received a pre-paid debit card in the amount of $211 upon his release. (Winfree Aff. at ¶ 4; Pl.'s Opp'n at 24.)

On October 11, 2012, Hanover County Sheriff David R. Hines ("Hines") met with Miller to discuss these events. (Aff. of David R. Hines ("Hines Aff.") at ¶ 3.) At the outset of their conversation, Miller was asked whether he was recording the conversation, to which he answered "yes." (*Id.*; Pl.'s Opp'n at ¶ 26.) Given Hines's objection, the conversation proceeded unrecorded for a total of thirty minutes. (Pl.'s Opp'n at ¶ 26.) Among other things, Sheriff Hines and Miller discussed the difference between "traveling" and "driving," the Constitution, and Hines's oath of office. (*Id.*)

Based on these events, Miller brought this action asserting several constitutional claims[7] against Parrish, Hines, Winfree, Lieutenant Ronald B. LeCarpentier ("LeCarpentier"), and four "John Does."[8] Specifically, Counts I, II, III, IV, V, and XII appear to assert claims for unlawful arrest and excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments.[9] Count VI alleges that his rights were violated by his detention without first presenting the charges against him to a grand jury. Invoking the doctrine of *respondeat superior*, Count IX alleges that Sheriff Hines maintains an unconstitutional custom or policy by establishing "safety checkpoints" in Hanover. Also with respect to Sheriff Hines, Count X claims a violation of Miller's First Amendment rights based on Hines's refusal to conduct a recorded conversation with Miller. Defendants Hines, LeCarpentier, Parrish, and Winfree now move for summary judgment

---

[7] Although Miller's Complaint also contains language conflating his constitutional claims with common law torts for "assault and battery," "negligence," and "fraud," his claims cannot be construed to state any such causes of action. Any such claims are entirely conclusory, at least as pleaded here. Fairly construed in his favor, he asserts constitutional claims for excessive force, unlawful search and seizure, an official policy and custom of engaging in unlawful searches and seizures, and a violation of the First Amendment. *See Erikson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (citation and internal quotation marks omitted); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Even in the case of *pro se* litigants, [courts] cannot be expected to construct full blown claims from sentence fragments. . .").

[8] In opposing summary judgment, Miller offers absolutely no evidence of unconstitutional conduct by Defendant LeCarpentier or any of the "John Doe" Defendants. On this basis alone, summary judgment is proper as to those Defendants.

[9] Reference to the Fifth and Fourteenth Amendments does not change the analysis of Miller's Fourth Amendment claims, as the Supreme Court has instructed that the Fourth Amendment alone governs searches and seizures. *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the[] claim[].") (citation and internal quotation marks omitted).

on all counts, arguing that Miller offers no evidence to support his constitutional claims. Even if he could, the deputies argue that they are shielded by qualified immunity.[10]

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

---

[10] Counts VII, VIII, XI, and XIII are asserted solely against Defendants Dew, Trible, Royalty, Reeves, and Hanover County. Each of those claims has previously been dismissed with prejudice.

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Anderson*, 477 U.S. at 252. Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247-48; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

Miller asserts his constitutional claims under 42 U.S.C. § 1983, proceeding against the Defendants in both their personal and official capacities. To succeed on any of these claims, he must show that Defendants: (1) acted under color of law (2) while depriving

9

him of a federal constitutional or statutory right, (3) thereby causing the alleged injury. 42 U.S.C. § 1983; *L.A. County v. Humphries*, __U.S.__, 131 S. Ct. 447, 452 (2010) (addressing the causation element); *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991) (addressing the elements of Section 1983 claims for both personal and official capacity suits); *Coppage v. Mann*, 906 F. Supp. 1025, 1035 (E.D. Va. 1995) (applying the elements on summary judgment). Even where a constitutional violation occurs, qualified immunity protects officers who—given clearly established law—could reasonably believe their actions lawful. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citations omitted).

## A. Insufficient Evidence of Constitutional Violations

Here, Defendants do not dispute that they were acting under color of law, nor do they challenge that their actions caused at least some injury to Miller. Instead, they challenge whether the facts—even viewed in the light most favorable to Miller—establish any constitutional violation in the first place. Defendants are correct that Miller has not offered sufficient evidence creating a genuine issue of material fact on this point. The evidence falls short of demonstrating an actionable constitutional violation.

### 1. Miller's Detention and Arrest

Miller's encounter with law enforcement began when he approached a "traffic safety checkpoint" in a pickup truck bearing an expired inspection sticker and non-government issued "farm use" tags, as opposed to license plates. On this observation, Parrish approached Miller and asked for his license and registration. All other claims flow from this initial encounter and detention, so the first question is: was Parrish's

detention of Miller lawful under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. The Court begins its analysis with this question.

The Fourth Amendment protects [t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const., amend IV; *see also United States v. Black*, 707 F.3d 531, 537 (4th Cir. 2013) (quoting Fourth Amendment). "The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *INS v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

"Although brief encounters between police and citizens require no objective justification, *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 1968), it is clearly established that an investigatory detention of a citizen by an officer must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity." *Black*, 707 F.3d at 537 (citing *Terry*, 392 U.S. at 21). "The level of suspicion must be a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* at 539 (quoting *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009)). In other words, "'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21). "The reasonable suspicion determination does not depend upon any one factor, but on the totality of the circumstances." *United States v. Brugal*, 209 F.3d 353, 359 (4th Cir. 2000) (*en banc*).

Police may act upon observed traffic violations to provide the "individualized suspicion" required to conduct a *Terry* stop. *Wren v. United States*, 517 U.S. 806, 818 (1996). Indeed, the Fourth Circuit has specifically "concluded that a brief stop at a checkpoint for the limited purpose of verifying a driver's license, vehicle registration, and proof of insurance is a reasonable intrusion into the lives of motorists and their passengers *even in the absence of reasonable suspicion.*" *Brugal*, 209 F.3d at 357 (emphasis added); *see also Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 447-48 (1990) (approving further detention to check license during checkpoint where there is reasonable suspicion of a traffic violation).

Whether Parrish was incorrect that Miller was violating the law—which seems to be the emphasis of Miller's argument concerning Virginia's statutes governing farm-use vehicles—is of marginal significance. Although Defendants in this case might dispute the point, the Court will assume for the sake of analysis that Miller was traveling to the feed store on farm business. (Pl.'s Opp'n at ¶ 17.) The Court also assumes—without deciding—that such travel to the feed store constitutes farm business properly within Virginia's statutory exception for farm-use vehicles. *See* Va. Code §§ 46.2-665 through 46.2-673.

Particularly instructive here, the Second Circuit's decision in *United States v. Jenkins* ruled that an officer's mistaken belief that a car lacked valid license plates did not render the stop unconstitutional. 452 F.3d 207, 212 (2d Cir. 2006). In that case, the officers realized their mistake when they observed an out-of-state temporary license plate while approaching the car. Citing the Supreme Court's decision in *Wren*, 517 U.S. at

810, the Second Circuit held that the initial basis for the stop was valid because the officers reasonably believed that the car lacked license plates—a violation of a New York traffic safety statute. *Jenkins*, 452 F.3d at 212. Even after realizing their mistake, the officers were permitted to speak with the car's occupants to apprise them of the situation. *Id.* Any unlawful conduct observed during such a brief encounter could then provide the basis for a further detention or arrest. *Id.*

Given the weight of these authorities, it is clear that Deputy Parrish did not violate the Fourth Amendment when he asked for Miller's driver's license at a traffic safety checkpoint. But, the analysis does not end there, because "an initially permissible checkpoint seizure may transform into an impermissible one by further intrusions not based upon individualized suspicion or consent." *Brugal*, 209 F.3d at 357 (citations omitted). While Parrish had authority to briefly detain Miller as part of a traffic safety checkpoint and request his driver's license, he needed reasonable suspicion to continue the investigatory detention and, ultimately, probable cause to arrest him. *Virginia v. Moore*, 553 U.S. 164, 173 (2008) ("[A] warrantless arrest satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing an offense.") (citation and internal quotation marks omitted). Miller's own actions provided both reasonable suspicion and probable cause.

Deputy Parrish observed farm-use tags and noted that Miller's truck had an expired inspection sticker. Generally, Virginia requires vehicles traveling on the public roadways to be licensed and registered. Va. Code §§ 46.2-600, -711. Normally, drivers are also required to possess a valid driver's license. Va. Code § 46.2-300. As a narrow

13

exception to these rules, farmers are permitted to "temporarily" drive farm vehicles on the roadways without a driver's license, license plate, or registration. Va. Code §§ 46.2-303, -662 through -674.[11] Even assuming that Miller was properly within these exceptions, there is no evidence that Parrish knew—or should have known—that the purpose of Miller's travels fell within a farm-use exception. Under Virginia law, the acceptable use of such an unlicensed "farm-use" truck on a public roadway is allowed only under narrow, specifically enumerated circumstances. *See* Va. Code §§ 46.2-662 through -674. Virginia law does not provide a blanket exception for farmers to drive unlicensed vehicles on public roads for any purpose. Parrish was properly investigating whether Miller was acting within a legal exception.

During Parrish's attempt to investigate the situation, Miller steadfastly refused to provide Parrish with his driver's license or registration. Upon Miller's refusal—unaware of whether Miller was properly acting within the farm-use exceptions—Parrish had probable cause to arrest Miller for unlicensed driving in violation of Va. Code § 46.2-300. *See also* Va. Code § 19.2-74(A)(1) (authorizing arrest for misdemeanor where arrestee refuses to discontinue unlawful act); *Virginia v. Moore*, 553 U.S. 164, 176-78 (2008) (warrantless arrest for misdemeanor driving offense did not violate Fourth Amendment, even though state law required issuance of summons instead of arrest); *Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1992) (refusal to provide

---

[11] Va. Code §§ 46.2-662 through -674 provide an enumerated list of those uses of a vehicle that fall within the exception. Arguably, the facts allow Miller to claim that he was going to the feed store to get agricultural supplies, as permitted under § 46.2-665(B)(6). For purposes of addressing summary judgment, the Court will accept that this exception applied here.

license and failure to obey road barricade provided probable cause). Notably, the farm-use exception at issue here only allows operation of a farm-use truck within thirty miles to obtain agricultural supplies. *See* Va. Code § 46.2-665(B)(6). A perfectly reasonable mode of investigating whether the exception applies would be to determine whether the driver is within thirty miles of his home by looking at his identification or any other indicia of address. That is precisely what Parrish appears to have been doing in this case.

On these undisputed facts, Parrish had probable cause to arrest Miller for driving without a license. Thus, summary judgment will be granted to Defendants on the unlawful arrest claim, as set forth in Counts I, II, IV, V, and XII.

## 2. Excessive Force Claim

Having determined that Miller was lawfully arrested, the question then becomes whether Parrish and his fellow deputies applied excessive force in effecting his arrest. Where an arrest is otherwise proper, a plaintiff may nonetheless demonstrate a Fourth Amendment violation if he shows that the officer's use of force to achieve arrest was objectively unreasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). "A court determines whether an officer has used excessive force to effect a seizure based on a standard of 'objective reasonableness.'" *Jones*, 325 F.3d at 527 (quoting *Graham*, 490 U.S. at 399). This analysis must be conducted "'from the perspective of a reasonable officer on the scene,'" as the Court must "avoid judging the officer's conduct with the '20/20 vision of hindsight,' recognizing that 'police officers are often forced to make split-second

15

judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Id.* (quoting *Graham*, 490 U.S. at 396-97).

Generally, the reasonableness of police actions are "not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Thus, the Court must "careful[ly] atten[d] to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, to determine whether "the totality of the circumstances justified a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Those circumstances include the severity of the crime, any immediate threat posed by the arrestee, efforts to actively resist or evade arrest, and the extent of any injuries inflicted upon the arrestee. *Graham*, 490 U.S. at 396; *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987).

Admittedly, neither the crime involved nor the threat posed by Miller appear to be serious. But by Miller's own admission, he intentionally resisted arrest by gripping the steering wheel full force when Parrish attempted to place him under arrest. (Pl.'s Opp'n at ¶ 12.) Miller then maintained a rigid posture to make it difficult for the arresting deputies to handcuff him. (*Id.* at ¶¶ 14-15.) Miller agrees with Parrish and Carter's description of the force applied. (*Id.* at 12-15; Dew Tr. at 8.) They simply shut off the engine, pulled Miller's hands off of the steering wheel, removed him from the truck, and forcibly placed his hands behind his back to handcuff him. (Parrish Aff. at ¶ 14; Carter Aff. at ¶ 8; Pl.'s Opp'n at ¶ 12.) In the process, Miller struck Parrish, albeit mildly. (Parrish Aff. at ¶ 14; Dew Tr. at 8.) There is no evidence of any serious or lasting injuries to Miller, only minor bumps and bruises. Of course, once Miller struck Parrish

16

with his hand, the need to apply force became more urgent—but there is no indication that Parrish or any other officer responded to Miller's actions disproportionately. Instead, the amount of force applied appears to be relatively *de minimis* and certainly not excessive.

For these reasons, the Court will grant summary judgment to the Defendants on Miller's excessive force claim as set forth in Counts II, III, IV, V, and XII.

### 3.     Failure to Present Charges to Grand Jury before Arrest

Miller claims that his arrest was unlawful because Parrish did not secure an indictment from a grand jury before his arrest. This claim fails for the simple reason that Miller was arrested under Virginia law, and the Fifth Amendment right to indictment by a grand jury was not incorporated in the Fourteenth Amendment; hence, it has no application to the states. *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n.25 (1972). Even so, presentment of felony charges to a grand jury may be required before a case proceeds to trial, but it is not required merely to make an arrest. *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975) (approving informal proceedings for initial probable cause determination authorizing arrest, such as review by a magistrate). Here, there is simply no evidence that Miller's state criminal case has proceeded to trial, so any right to have his case presented to a grand jury is premature. Summary judgment will be granted on Count VI.

### 4.     Search and Seizure at the Jail

Upon Miller's arrival at Pamunkey Regional Jail, Defendant Winfree conducted a pat-down and inventory search according to established jail procedures. (Winfree Aff. at ¶ 3.) Miller offers no evidence disputing this version of events, so his conclusory attempt

to place this fact in dispute fails. *See Anderson*, 477 U.S. at 247-48 (explaining non-moving party's obligation to offer evidence). Miller admits that his $211 cash was taken from him and returned in the form of a Visa debit card, but he challenges the constitutionality of this practice because of fees and contract terms tied to the debit card. (Winfree Aff. at ¶4; Pl.'s Opp'n at ¶ 24.) Under these facts, neither the inventory search nor the manner in which Miller's money was returned can form the basis of a constitutional claim.

First, it is well-established that "A proper inventory search is merely 'an incidental administrative step following arrest and preceding incarceration,'" *United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007) (quoting *Illinois v. Lafayette*, 462 U.S. 640, 644 (1983)). Such searches are permissible "to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing." *Id.* (citing *Lafayette*, 462 U.S. at 646). An inventory search under this exception "must 'be conducted according to standardized criteria.'" *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 374 n.6 (1987)). In Miller's case, there is no genuine dispute that Winfree conducted an inventory search according to established jail protocol, so his actions did not run afoul of Miller's Fourth Amendment rights.

With respect to Miller's claim of losses suffered when his cash was returned in the form of a debit card, that claim too must fail. First, any loss appears to have been a minor administrative expense resulting from a procedure designed to safeguard an arrestee's money. Even so, Miller has offered no evidence of the amount of monetary loss suffered.

(Pl.'s Opp'n at ¶ 24.) Regardless, courts have treated such claims as cognizable under the takings clause of the Fifth Amendment. *See, e.g., Wos v. Sheahan*, 57 Fed. App'x 694, 697 (7th Cir. 2002) (citing *Daniels v. Area Plan Comm'n*, 306 F.3d 445, 453-54 (7th Cir. 2002)). But those decisions have also recognized that a plaintiff must first seek compensation in state court for any alleged losses under the takings clause before he may bring a claim under Section 1983. *Id.* Because Miller has not shown that he sought such relief in this case, summary judgment must be granted on this claim.

### 5.      Custom or Policy of Sheriff Hines

Miller seeks to hold Sheriff Hines responsible for the purportedly unconstitutional nature of the traffic safety checkpoint. One theory that he advances is clearly foreclosed by existing precedent—the doctrine of *respondeat superior* does not apply to create supervisory liability in Section 1983 cases. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, (1978). And while Hines could be liable if he established an official policy or custom that violates a constitutional right, Miller has failed to show any constitutional violation in the first instance. As this Court has already noted, the Supreme Court has held that traffic safety checkpoints are constitutional. *Sitz*, 496 U.S. at 447-48; *Brugal*, 209 F.3d at 357. Regardless, Miller has offered absolutely no evidence that Hines adopted a specific custom or policy to violate citizens' rights, and so Sheriff Hines is entitled to summary judgment on Count IX.

### 6.      First Amendment Claim

Miller's First Amendment claim is based on Sheriff Hines's request that Miller not record a voluntary conversation between them. As the Court already noted in its denial

of Miller's Motion for Summary Judgment, there is no authority supporting Plaintiff's claim that Sheriff Hines' had a First Amendment obligation to allow himself to be recorded. Even if such authority exists, it would not be supported by the facts here. In his Affidavit, Sheriff Hines indicates that Plaintiff voluntarily agreed not to record the conversation. (Hines Aff. at ¶ 3.) Miller has not offered any evidence disputing this point. (Pl.'s Opp'n at ¶ 26.) Moreover, there exists no authority to suggest that the First Amendment requires a public official to discuss ongoing criminal and civil claims with a citizen, recorded or otherwise. Accordingly, Sheriff Hines is entitled to summary judgment on Count X.[12]

## B.  Qualified Immunity

Even assuming that any of Defendants' actions violated Miller's rights, Parrish, LeCarpentier, Winfree, and each of the "John Doe" Defendants could reasonably believe their actions were lawful under clearly established law. Thus, as an alternative defense, Miller's case fails against these Defendants because they are entitled to qualified immunity.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry*, 652 F.3d at 531 (citations omitted). The Supreme Court has approved

---

[12] In Count X, Miller makes reference to the cases of *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir.2012), *cert. denied*, 133 S. Ct. 651; *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); and, *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). None of these cases recognize a First Amendment right to force a public official to hold a conversation; nor do any of these cases prohibit the public official from refusing to talk in the presence of a recording device. Thus, these cases do not change the analysis.

the discretionary use of a the two-part analysis in *Saucier v. Katz*, 533 U.S. 194, (2001).

*See Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010) (citations omitted). The *Saucier* test first asks whether a constitutional violation occurred and, second, whether the right violated was clearly established. *Id.* It goes without saying that "'[i]f [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there.'" *Henry*, 652 F.3d at 531 (quoting *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007)).

Law enforcement officers may be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable. *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991) (*per curiam*). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

As the Court has already discussed, *supra* at Section III(A), there are a bevy of cases showing that Defendants actions were constitutional at every step. *Moore*, 553 U.S. at 173 (warrantless arrest for misdemeanor); *Garner*, 471 U.S. at 8-9 (level of force commensurate with circumstances); *Gerstein*, 420 U.S. at 120 (arrest before indictment by grand jury); *Banks*, 482 F.3d at 739 (allowing inventory search upon arrest); *Brugal*, 209 F.3d at 357 (checkpoints).

Miller has not offered sufficient evidence to support any of his constitutional claims. But alternatively, if an actionable claim had been shown, Defendants Parrish, LeCarpentier, Winfree, and each of the "John Does" would be entitled to qualified

immunity. No reasonable law enforcement officer would conclude that their action transgressed Miller's clearly established rights. *See Scott v. Harris*, 550 U.S. 372, 386 (2007).

## IV. CONCLUSION

Miller has failed to offer more than a "mere scintilla" of evidence, *Anderson*, 477 U.S. at 252, establishing any constitutional claim against Hines, Parrish, LeCarpentier, Winfree, or the "John Doe" Defendants. In any event, the doctrine of qualified immunity applies under these circumstances, foreclosing liability. Accordingly, the Court will grant Defendant's Motion for Summary Judgment and dismiss Miller's case.

/s/
_____
Henry E. Hudson
United States District Judge

Date: May 2, 2013
Richmond, Virginia